# **RECORD IMPOUNDED**

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3767-15T2

NEW JERSEY DIVISION OF CHILD
PROTECTION AND PERMANENCY,

    Plaintiff-Respondent,

v.

K.B.,[1]

    Defendant-Appellant,

and

P.G.,

    Defendant.

_____

IN THE MATTER OF THE GUARDIANSHIP
OF G.B.,

    Minor.

_____

        Submitted March 8, 2017 — Decided August 31, 2017

        Before Judges Fuentes, Simonelli and Gooden Brown.

---

[1] Pursuant to <u>Rule</u> 1:38-3(d)(12), we use initials to protect the confidentiality of the parties in these proceedings.

On appeal from Superior Court of New Jersey, Chancery Division, Family Part, Sussex County, Docket No. FG-19-0028-15.

Joseph E. Krakora, Public Defender, attorney for appellant (Carol A. Weil, Designated Counsel, on the briefs).

Christopher S. Porrino, Attorney General, attorney for respondent (Andrea M. Silkowitz, Assistant Attorney General, of counsel; Victoria Almeida Galinski, Deputy Attorney General, on the brief).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for minor (Charles Ouslander, Designated Counsel, on the brief).

PER CURIAM

Defendant K.B. is the biological mother of a nine-year-old girl identified here as G.B. Defendant appeals from the Family Part's Judgment of Guardianship terminating her parental rights to her daughter. We affirm.

It is undisputed that defendant has a severe and chronic substance abuse problem involving prescription opiate-based medication, heroin, and cocaine. In response to the risk of imminent harm defendant's addiction posed to G.B., the Division of Child Protection and Permanency (Division) executed an emergency Dodd removal[2] of the child on April 10, 2014. On April

_____

[2] "A 'Dodd removal' refers to the emergency removal of a child from the home without a court order, pursuant to the Dodd Act, which, as amended, is found at N.J.S.A. 9:6-8.21 to -8.82. The

14, 2014, the Division filed a Verified Complaint and Order to Show Cause (OTSC) in the Family Part against defendant and the child's biological father, P.G., based on evidence showing that defendant's addiction was causing the child to be abused and neglected within the meaning of N.J.S.A. 9:6-8.21c(4). Specifically, a Division investigation discovered the child was not properly attended and exhibited signs of neglect in the form of poor hygiene, had been excessively absent or tardy to school, and displayed inappropriate aggressive behavior.

The Family Part found the Division's decision to execute an emergency Dodd removal of G.B. under these circumstances was appropriate. The court found defendant's drug use while G.B. was in her custody placed the child's life in imminent danger and compromised her health and safety. The court awarded the Division temporary custody of G.B. and permitted defendant to have supervised visits. P.G., did not attend the OTSC hearing and was not granted visitation rights.[3]

---

Act was authored by former Senate President Frank J. 'Pat' Dodd in 1974." See N.J. Div. of Youth & Family Servs. v. P.W.R., 205 N.J. 17, 26 n.11 (2011) (quoting N.J. Div. of Youth & Family Servs. v. N.S., 412 N.J. Super. 593, 609 n.2 (App. Div. 2010)).

[3] P.G. did not attend any of the hearings involving this case. On December 11, 2015, he voluntarily surrendered his parental rights to his daughter, G.B. He is not part of this appeal.

On May 22, 2014, the return date of the OTSC, the Family Part ordered defendant to submit to psychological and substance abuse evaluations and attend psychotherapy sessions. The court also continued its previous order awarding temporary custody of G.B. to the Division. The next hearing connected to this Title 9 litigation took place on June 30, 2014. On that date, the court found defendant noncompliant with its order requiring her to submit to psychological and substance abuse evaluations and attend and participate in psychotherapy. Furthermore, because she had previously tested positive for oxycodone, the court ordered defendant to provide medical evidence authorizing her use of this powerful opiate-based medication. The court directed the Division to arrange for G.B. to participate in therapy to help her address and reduce her aggressive behavior. Finally, in response to G.B.'s request, the court barred her maternal grandfather, A.B.,[4] from having any contact with her.

On August 8, 2014, defendant waived her rights to a fact-finding hearing under N.J.S.A. 9:6-8.44 and knowingly and voluntarily stipulated that she had taken opiate-based medication without a prescription from a physician. Defendant admitted that

---

[4] The Division had previously substantiated A.B. for abuse after he allegedly held a knife in a threatening fashion while arguing with K.B.

she was under the influence of this narcotic medication while she had custody of G.B., and thus placed the child at substantial risk of imminent harm. With respect to her ethnic and cultural heritage, defendant stated under oath that neither she nor the child's father was "an enrolled member of an American Indian tribe or eligible to be an enrolled member[.]"[5]

At a permanency hearing conducted on March 4, 2015, the Family Part found the Division's plan for termination of defendant's parental rights to G.B. was an appropriate and acceptable goal under the circumstances. The court found the Division provided defendant with reasonable services to address and treat her addiction, including psychological evaluations, random drug screens, and domestic violence services. Despite this, defendant had not made meaningful progress in dealing with her substance abuse problem. On April 13, 2015, the Division filed a complaint for guardianship of G.B. Consequently, the court dismissed the Title 9 abuse and neglect complaint and directed the Division to proceed with its Title 30 guardianship case.

---

[5] In an order dated November 7, 2016, this court granted the Division's unopposed motion to supplement the appellate record with respect to this issue. As a result, the record now contains unrebutted evidence that the Division complied with the requirements of the Indian Child Welfare Act. See 25 U.S.C.A. §§ 1901—63. It is also established, by clear and convincing evidence, that defendant was neither enrolled nor eligible to be enrolled in a Native American tribe, specifically the Cherokee Nation.

Judge James A. Farber presided over the guardianship trial, which was conducted over two non-sequential days on January 25, 2016 and April 25, 2016. Defense counsel notified defendant of the date and time of both trial dates. Defendant arrived late for the first trial date and did not attend the second date due to her hospitalization in connection with her substance abuse problem. However, defendant's attorney was present and advocated on her behalf on both days. In lieu of describing in detail the evidence the Division presented at the guardianship trial, we will incorporate by reference Judge Farber's comprehensive factual findings which are reflected in his oral decision delivered from the bench on April 25, 2016. We will only briefly mention Judge Farber's key findings in support of the termination of defendant's parental rights to G.B.

The Division produced school records showing that on February 19, 2014, G.B.'s teacher reported G.B. was wearing "dirty and unkempt clothes" that were too small for her. The teacher reported she had "difficulty" contacting defendant or G.B.'s father about the child's failure to complete homework assignments. During this time period, G.B. had eighteen unexcused absences and was tardy eleven times. In response to defendant's request, the school administration switched G.B.'s schedule from morning to afternoon sessions. However, this resulted in an increase in the number of

unexcused absences. G.B. was also inappropriately physically aggressive with other children in the school. Her behavioral problems in this respect included "tripping, pushing, and pulling" a handicapped child and "stealing other items." G.B. told her teacher that "her mom sleeps a lot[]" and "drink[s] to the point of intoxication."

Judge Farber noted defendant had stipulated that her substance abuse problem had placed G.B. at risk of harm. The Division's investigation revealed, and Judge Farber accepted as credible, that G.B. witnessed defendant's drug use. Defendant was arrested on September 22, 2014 for possession of heroin and hypodermic needles. She admitted to using five to ten bags of heroin per day. On December 2, 2014, the Division received a report from St. Joseph's Medical Center that defendant had been released from jail while she was thirty-two weeks pregnant.[6] Defendant admitted to using heroin and appeared to be under the influence at the time. Defendant tested positive for opiates numerous times thereafter.

---

[6] Defendant gave birth to her second child in January 2015. Her pregnancy was high risk due to her continued use of heroin. The child tested positive for opiates at birth. The Division took custody of the infant. Defendant signed herself out of the hospital against medical advice.

On September 24, 2015, psychologist Dr. Mark Singer conducted a bonding evaluation with G.B. and defendant. Dr. Singer also attempted to perform a psychological evaluation of defendant, but was unable to complete it because defendant left the office without completing the requisite personality test. Dr. Singer concluded that G.B. continued to view defendant as a significant parental figure. However, he opined that the child's attachment to her mother under these circumstances was unhealthy. He did not consider defendant to be a viable parental option.

Dr. Singer also conducted a bonding evaluation between G.B. and her resource foster parents. He opined that G.B. had formed a healthy relationship with them and had acknowledged them as her caregivers. According to Dr. Singer, this acknowledgement creates "the foundation for a meaningful parent-child attachment." Dr. Singer noted that G.B.'s feelings about defendant had evolved. Although she initially viewed a permanent separation from her mother as a negative event, current data indicates that her relationship with her foster parents will buffer and mitigate this emotional trauma.

In addition to Dr. Singer, the Division presented testimony from Division caseworkers Renata Cuoco and Meghan Berkery, as well as probation officer Andrea Halstead. Cuoco testified about the child's experience with her foster parents. Cuoco also oversaw

the services the Division provided to defendant to assist her in addressing her substance abuse problem. Despite these efforts, defendant continued to test positive for cocaine and opiate-based medications, including morphine and oxycodone. Defendant was discharged from Lennard Clinic, Inc. and Morris County After Care Center for failing to follow the treatment modalities offered at these facilities. Caseworker Berkery's testimony corroborated Cuoco's account of the Division's interactions with defendant.

"Permanent termination of parental rights is the ultimate intrusion on the right to raise a child." N.J. Dep't of Children & Families, Div. of Youth & Family Servs. v. A.L., 213 N.J. 1, 25 (2013). To justify termination of parental rights, the Division must establish:

> (1) The child's safety, health, or development has been or will continue to be endangered by the parental relationship;
>
> (2) The parent is unwilling or unable to eliminate the harm facing the child or is unable or unwilling to provide a safe and stable home for the child and the delay of permanent placement will add to the harm. Such harm may include evidence that separating the child from his resource family parents would cause serious and enduring emotional or psychological harm to the child;
>
> (3) The [D]ivision has made reasonable efforts to provide services to help the parent correct the circumstances which led to the child's placement outside the home and the court has

considered alternatives to termination of parental rights; and

(4) Termination of parental rights will not do more harm than good.

[N.J.S.A. 30:4C-15.1a.]

The Supreme Court has made clear that these four prongs are not "'discrete and separate,' but 'relate to and overlap with one another to provide a comprehensive standard that identifies a child's best interests.'" N.J. Div. of Youth & Family Servs. v. G.L., 191 N.J. 596, 606–07 (2007) (quoting In re Guardianship of K.H.O., 161 N.J. 337, 348 (1999)). Here, Judge Farber found all of the witnesses called by the Division credible. We are bound to defer to these findings. See Cesare v. Cesare, 154 N.J. 394, 411–13 (1998).

Against these standards of review, we are satisfied Judge Farber correctly applied the four-prong best interest standard to find, by clear and convincing evidence, that terminating defendant's parental rights will not do more harm than good to G.B. Judge Farber emphasized Dr. Singer's testimony that defendant's conduct "is destructive" to G.B. By contrast, the child's foster parents have "become [her] psychological parents" and "though there would be harm from severing the relationship between mother and daughter," the foster parents could "mitigate that harm[,] which would therefore not be severe or enduring."

10

The record is replete with unrebutted evidence that the Division offered defendant services and afforded her multiple opportunities to address her severe and chronic substance abuse problem. The record shows defendant failed to take advantage of these services and continued on a path of self-destruction. Although the Division was unable to help defendant, it timely and successfully intervened to rescue her daughter from her mother's abuse and neglect, and thereafter found foster parents able and willing to provide this child with a loving and nurturing environment. The Law Guardian, who is charged with representing G.B. in this appeal, also agrees that termination of defendant's parental rights is in G.B.'s best interest.

We thus affirm substantially for the reasons expressed by Judge Farber in his oral decision delivered from the bench on April 25, 2016.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3767-15T2